IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02657-JLK-KLM

GREENTREE TRANSPORTATION CO., a Delaware corporation,

  Plaintiff,

v.

SPEEDY HEAVY HAULING, INC., a Colorado corporation, and
ENQUEST ENERGY SERVICES CORP., a Canadian corporation,

  Defendants.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's **Motion for Default Judgment** [Docket No. 53; Filed July 7, 2011] (the "Motion"). Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C., the Motion has been referred to this Court for recommendation [Docket No. 54]. Plaintiff seeks entry of default judgment against Defendants Speedy Heavy Hauling, Inc. ("Speedy") and EnQuest Energy Services Corp. ("EnQuest" and collectively, "Defendants"). Due to Defendants' failure to obtain counsel, the Clerk of Court entered default against Defendants on June 14, 2011 [Docket Nos. 48, 50]. Defendants have not responded to the present Motion and, while all correspondence sent by the Court to Defendant EnQuest at its last known addresses has been returned as undeliverable, the relevant filings sent to Defendant Speedy have presumably been received. For the reasons set forth below, the Court recommends that the Motion be **GRANTED IN PART and DENIED IN PART**.

1

## I. Factual and Procedural Background

Plaintiff GreenTree is Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania.[1] *Compl.*, Docket No. 1 at 1. Plaintiff is a common and contract carrier, specializing in the transport of "steel, building products, machinery, and equipment." *Id.* Defendant Speedy is a Wyoming corporation doing business in Colorado, with an office located in Grand Junction, Colorado, and a registered agent located in Denver, Colorado. *Id.* at 1-2; *Sched. Ord.*, Docket No. 25 at 5-6. Speedy was "engaged in the business of the dismantling, mobilization, and reassembly of oil, gas, and geothermal drilling rigs." *Compl.*, Docket No. 1 at 2. Defendant EnQuest is a Canadian corporation with its principal office located in Calgary, Alberta. *Id.* Defendant Speedy is a wholly-owned subsidiary of EnQuest. *Id.*; *Sched. Ord.*, Docket No. 25 at 6. Defendant Speedy is no longer in operation; Speedy sold substantially all of its operating assets and wound down its business, as indicated in a notice provided to Plaintiff on August 26, 2010. *Ex. 2*, Docket No. 1-2.

Nearly one year earlier, in "Autumn 2009," Plaintiff provided freight services to Defendant Speedy, resulting in a total bill, including interest, in the amount of $303,402.16. *Compl.*, Docket No. 1 at 3; *Ex. 3*, Docket No. 1-3. Speedy, through Defendant EnQuest's Chief Executive Officer and its agent, "negotiated a forbearance arrangement with [Plaintiff] to repay the past due receivable due and owing to [Plaintiff] by Defendant [Speedy]." *Compl.*, Docket No. 1 at 3. "[A]n oral and written agreement" was entered into by Plaintiff

---

[1] As further explained below, in making a recommendation on a motion for default judgment, the Court accepts the well-pled (as opposed to merely conclusory) allegations of Plaintiff's Complaint as true. *Greenwich Ins. Co. v. Daniel Law Firm*, No. 07-cv-2445-LTB-MJW, 2008 WL 793606, at *1 (D. Colo. Mar. 22, 2008) (unpublished decision) (citations omitted).

2

and Speedy on March 17, 2010, in which Speedy agreed to pay to Plaintiff a total of $330,812.87, "representing a principal amount of $321,929.00, plus $8,883.87, representing one-half of the amount of accrued interest due and owing to [Plaintiff] as of the date of the Agreement." *Id.*; *Ex. 1*, Docket No. 1-1. Plaintiff forfeited the remaining half of the accrued interest due, contingent on Speedy's full payment of the amount stated in the agreement. *Id.*

The agreement included provisions for installment payments by Speedy until the total amount was paid in full. *Compl.*, Docket No. 1 at 3-4. The agreement further prescribed that, should Speedy sell "all or substantially all of its assets in the asset sale transaction referred to in the press release of [Speedy's] parent company, EnQuest . . . ," the balance remaining to be paid of the principal amount would be paid within ten days of the asset sale. *Id.*; *see also Ex. 1*, Docket No. 1-1.

Speedy partially performed its obligations stated in the agreement. Plaintiff received $36,312.00 from Speedy on April 7, 2010, and $10,000.00 from Speedy on August 10, 2010. *Compl.*, Docket No. 1 at 4. Plaintiff attests that it "has received no further payments under the Agreement from Defendant [Speedy]." *Id.*; *see also Sched. Ord.*, Docket No. 25 at 6.

On August 21, 2010, Defendant EnQuest announced that all of Speedy's assets were sold on August 13, 2010. *Id.* Neither Defendant paid the remaining balance of the principal amount due to Plaintiff within the time stated by the agreement, "or at all." *Id.* In a letter from Speedy to Plaintiff dated August 26, 2010, Speedy advised Plaintiff that it had sold all of its operating assets and was winding down. *Ex. 2*, Docket No. 1-2. Speedy further informed Plaintiff that, as an unsecured creditor, Plaintiff might only be paid partially

for the amount owed. *Id.*

Plaintiff alleges that Defendant EnQuest "had no intention of paying [Plaintiff] in full under the Agreement." *Compl.*, Docket No. 1 at 4. Plaintiff believes EnQuest used Speedy as its alter ego with the purpose of inducing Plaintiff to forbear from collecting the amount due, despite the agreement. *Id.* Plaintiff asserts Enquest "had absolute and active control" over Speedy and "purposefully misled [Plaintiff] to believe that all sums due under the Agreement would be repaid within ten (10) days after the sale of [Speedy's] assets." *Id.* at 5. Plaintiff further claims that EnQuest "failed to maintain corporate formalities, [and] commingled its funds with the funds of [Speedy]." *Id.*

Plaintiff initiated this lawsuit on October 29, 2010 [Docket No. 1]. Defendant Speedy filed an Answer to Plaintiff's Complaint on December 22, 2010 [Docket No. 5], and Defendant EnQuest filed an Answer on December 29, 2010 [Docket No. 6]. Both Answers were submitted by the same counsel, Ms. Julie Trent. Ms. Trent appeared for both Defendants at the Scheduling Conference on March 9, 2011. *Sched. Ord.*, Docket No. 25 at 2. In April 2011, Ms. Trent and other counsel of record appearing for Defendants requested permission to withdraw [Docket Nos. 29, 32, 35]. The Court granted these requests on April 14, 2011 [Docket No. 38] and instructed Defendants that, as entity parties, they must retain new counsel, at the risk of an entry of default. *Ord.*, Docket No. 38 at 2.

Defendants did not comply with the deadline for new counsel to enter an appearance. The Court thus issued an Order to Show Cause on April 28, 2011 [Docket No. 42], as to why default should not be entered against Defendants pursuant to Fed. R. Civ. P. 55(a). *Ord.*, Docket No. 42 at 2. Defendants did not respond to the Order to Show

Cause. The Order was made absolute on June 14, 2011 [Docket No. 48]. The Clerk of Court entered default against both Defendants on June 15, 2011 [Docket No. 50]. Plaintiff timely filed the Motion at issue on July 7, 2011 [Docket No. 53].

## II. Analysis

Pursuant to Fed. R. Civ. 55, default may enter against a party who fails to appear or otherwise defend the case brought against it. However, even after an entry of default, the Court must decide "whether the unchallenged facts create a legitimate basis for the entry of a judgment." *See Greenwich Ins. Co. v. Daniel Law Firm*, No. 07-cv-2445-LTB-MJW, 2008 WL 793606, at *1 (D. Colo. Mar. 22, 2008) (unpublished decision) (citations omitted). "[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Id.* at *2 (quoting *Cablevision of S. Conn., Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001)).

### A. Jurisdiction

In determining whether the entry of default judgment is warranted here, the Court must first consider whether the Court has subject matter and personal jurisdiction. *Dennis Garberg & Assoc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997)*; Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202-03 (10th Cir. 1986). The Court must do so in consideration of the well-established law that "a judgment is void if the court that enters it lacks jurisdiction over either the subject matter of the action or the parties to the action." *Williams*, 802 F.2d at 1203.

### 1. Subject Matter Jurisdiction

Plaintiff asserts that the Court has subject matter jurisdiction over this lawsuit based on diversity jurisdiction. *Compl.*, Docket No. 1 at 2. Diversity jurisdiction is governed by 28 U.S.C. § 1332(a), which provides in pertinent part that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . (1) citizens of different states; [or] (2) citizens of a State and citizens of a foreign state." Here, the parties stipulated to the facts that Plaintiff is a Delaware corporation, Speedy is a Wyoming corporation, and EnQuest is a Canadian corporation.[2] *See Sched. Ord.*, Docket No. 25 at 6. Plaintiff seeks damages in the amount of $303,402.16. *Id.* at 7. Therefore, complete diversity and an adequate amount in controversy are present, and the Court may exercise subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a).

### 2. Personal Jurisdiction

Plaintiff bears the burden of establishing personal jurisdiction. *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). "[P]laintiff need only make a *prima facie* showing [of personal jurisdiction] if the motion [for default judgment] is decided only on the basis of the parties' affidavits and other written materials." *Dennis Garberg & Assoc., Inc.*, 115 F.3d at 773. As further explained below, in making a

---

[2] Pursuant to 28 U.S.C. § 1332(a), diversity jurisdiction includes matters between "citizens of different States" and matters between "citizens of a State and citizens or subjects of a foreign state." The parties stipulate that Defendant EnQuest is a Canadian corporation, thus EnQuest is a subject of a foreign state. *See Oteng v. Golden Star Resources, Ltd.*, 615 F. Supp. 2d 1228, 1234 (D. Colo. 2009) (citing *JPMorgan Chase Bank v. Traffic Stream (BVI)*, 536 U.S. 88, 91 (2002)) (a corporation of a foreign state is a citizen or subject of such foreign state for purposes of United States jurisdiction). Domestically, a corporation is "a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

recommendation on a motion for default judgment, the Court accepts the well-pled allegations of Plaintiff's Complaint as true. This deferential pleading standard does not extend to statements of legal conclusion couched as fact. *Cf. Miller v. Kelly*, No. 10-cv-02132-CMA-KLM, 2010 WL 4684029, at *4 (D. Colo. Nov. 12, 2010) (citations omitted) ("While the Court accepts Plaintiff's well-pled allegations as true for the purpose of establishing personal jurisdiction over Defendant . . . It accords no deference to Plaintiff's conclusory and wholly unsupported allegations.").

"Where a court possesses subject matter jurisdiction, . . . the parties may waive lack of personal jurisdiction." *Gardner v. City & Cnty. of Denver*, 671 F. Supp. 713, 714 (D. Colo. 1987) (citation omitted). Pursuant to Fed. R. Civ. P. 12(h)(1), a party may waive a defense premised on lack of personal jurisdiction by "failing to either: (I) make it by motion under this rule; or (ii) include it in a responsive pleading . . . ."

In the Complaint, Plaintiff asserts that the Court has personal jurisdiction over both Defendants pursuant to Colo. Rev. Stat. § 13-1-124, which is Colorado's "long-arm" statute. *Compl.*, Docket No. 1 at 2. Defendant Speedy did not raise personal jurisdiction as a defense in its Answer (filed by prior counsel), nor did it raise the issue by a motion pursuant to Fed. R. Civ. P. 12, thus the defense is waived on behalf of Defendant Speedy. *See Answer*, Docket No. 5. *See also Fox v. Cali. Franchise Tax Bd.*, No. 08-cv-01047-PAB-BNB, 2009 WL 3162519, at *7 (D. Colo. Sept. 30, 2009) ("objections to personal jurisdiction must be asserted in the defendant's pre-answer motion or the defense is waived") (citing Fed. R. Civ. P. 12(h))).

However, EnQuest avers in the Affirmative Defenses stated in its Answer (also filed by prior counsel) that this court lacks personal jurisdiction over it. *Answer*, Docket No. 6

7

at 6. Therefore, the defense was preserved as to Defendant EnQuest, and the Court must evaluate whether it may exercise personal jurisdiction before proceeding to determine whether default judgment may be entered against EnQuest.[3]

In a diversity action, the Court may only wield personal jurisdiction over a nonresident defendant if (1) the long-arm statute of Colorado permits the exercise of personal jurisdiction over the defendant, and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008); *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995) ("To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state"). "The Supreme Court of Colorado has interpreted Colorado's long-arm statute to extend jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment." *Impact Prods., Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1189 (D. Colo. 2004) (citing *Keefe v. Kirschenbaum & Kirschenbaum*, 40 P.3d 1267, 1270 (Colo. 2002)). Therefore, the Court need only consider whether the exercise of personal jurisdiction over EnQuest is permitted by the Due Process Clause.[4] *SCC Commc'ns Corp. v. Anderson*, 195 F. Supp.

---

[3] Typically, the Court must first address the adequacy of service in making its determination of personal jurisdiction. *See United States v. Elsberg*, No. 08-cv-00522-MSK-KLM, 2010 WL 5177439, at *2 (D. Colo. Aug. 17, 2010). Here, Defendants answered without contesting service as deficient [Docket Nos. 5, 6] and did not, while represented by counsel, raise the issue by motion. Moreover, the summonses entered as executed against both Defendants do not appear to be deficient [Docket Nos. 2, 4]. Thus, the Court proceeds to evaluate whether it may exercise personal jurisdiction over both Defendants in the context of proper service.

[4] The Due Process Clause permits the exercise of personal jurisdiction when two conditions are met. First, a defendant must have "minimum contacts" with the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Second, if sufficient minimum contacts are shown, "the

2d 1257, 1260 (D. Colo. 2002) ("[The] analysis turns on a single inquiry, whether the exercise of personal jurisdiction over [the defendant] comports with due process."); *Dudnikov*, 514 F.3d at 1070 ("[T]he first, statutory, inquiry effectively collapses into the second, constitutional, analysis.").

The Court may not exercise personal jurisdiction over EnQuest simply by virtue of its status as the parent of its wholly-owned subsidiary, Speedy. *E.g.*, *Tigerstripe Paintball, LLC v. Heckler & Koch, Inc.*, No. 1:09-CV-57-TC, 2010 WL 414471, at *3 (D. Utah Jan. 28, 2010) (citations omitted). In an action brought against both the parent company and the wholly-owned subsidiary, "[e]ach defendant's contacts with the forum State must be assessed individually." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) (citation omitted). In making this assessment, the Court looks to whether the parent company (EnQuest) exercises sufficient control over the subsidiary (Speedy), to determine whether EnQuest is conducting business in Colorado through the business practice of Speedy, thereby availing itself of the jurisdictional reach of this Court. *See Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1278 (10th Cir. 2005) ("[c]ompanies conducting business through their subsidiaries can qualify as transacting business in a state, provided the parent exercises sufficient control over the subsidiary."); *see also Curtis Publ'g Co. v. Cassel*, 302 F.2d 132, 137 (10th Cir. 1962) ("[A] wholly owned subsidiary may be an agent and when its activities as an agent are of such a character as to amount to doing business

---

Due Process Clause requires that [the Court] further consider whether the exercise of personal jurisdiction over [the] defendant would nonetheless offend traditional notions of fair play and substantial justice." *Impact Prods.*, 341 F. Supp. 2d at 1190. Here, the Court adjudicates the question of personal jurisdiction over EnQuest by virtue of its parent/subsidiary relationship to Speedy.

of the parent, the parent is subjected to the in personam jurisdiction of the state in which the activities occurred."); *Phone Directories Co. v. Contel Corp.*, 786 F. Supp. 930, 943 (D. Utah 1992) (noting that a parent company's exertion of "significant influence" on a subsidiary suffices for a court to exercise personal jurisdiction over parent).

Most of Plaintiff's allegations pertaining to the supposed control exercised by EnQuest over Speedy state legal conclusions, relying on the phrase "[u]pon information and belief" as a basis for the assertions, but failing to explain the information or basis for belief relied upon. By way of example, Plaintiff claims EnQuest used Speedy as an alter ego, committed fraud against Plaintiff and failed to maintain corporate formalities, but does not articulate the specifics of EnQuest's alleged wrongdoing. Review of the Complaint and subsequent filings demonstrates to the Court that the only well-pled factual allegation that is not merely conclusory is Plaintiff's assertion that EnQuest's CEO and agent negotiated an agreement with Plaintiff, on behalf of Speedy. However, Plaintiff provides no more information than this and does not state any further factual detail regarding the negotiations. Plaintiff refers to the agreement between it and Speedy, attached to the Complaint as Exhibit 1, but this agreement mentions EnQuest only in relation to a press release indicating Speedy's intention to conduct an asset sale. *See Ex. 1*, Docket No. 1-1. The agreement has two signature lines; one for Speedy, which notably lacks a signature, and one for Plaintiff. The agreement makes no statement that EnQuest intended to be bound by the agreement or that it was even privy to the formation of the agreement. The same holds true for the two other exhibits; neither include any mention of Defendant EnQuest.

In evaluating the reach of personal jurisdiction in the context of a motion for default judgment, "the court does not assert a personal defense of the parties; rather, the court exercises its responsibility to determine that it has the power to enter the default judgment." *Williams*, 802 F.2d at 1203. Here, the Court does not believe that Plaintiff has met its burden of making the minimal prima facie showing that the Court may exercise personal jurisdiction over EnQuest. The single statement, lacking factual support and corroboration by the exhibits, that EnQuest's CEO negotiated a forbearance agreement with Plaintiff on behalf of Defendant Speedy, does not demonstrate to the Court that EnQuest exerted control over Speedy to the extent that EnQuest was in fact utilizing Speedy as a mere conduit for its own business. Therefore, the Court recommends holding that there is no basis for the exercise of personal jurisdiction over EnQuest. The Motion should thus be denied to the extent that it seeks judgment against EnQuest. The Court proceeds to evaluate the Motion on its merits as to Defendant Speedy alone.

## B. Entry of Default

As a threshold issue, the Court examines whether default was entered properly in this case against Defendant Speedy. Corporations cannot appear in this Court without legal representation. *Harrison v. Wayatoyas, LLC*, 253 F.3d 552, 556 (10th Cir. 2001); D.C.COLO.LCivR 83.3D. The Court issued an order permitting defense counsel to withdraw from representation of both Defendants on April 14, 2011 [Docket No. 38]. In this order, the Court instructed Defendants that new counsel must enter an appearance on their behalf on or before April 25, 2011. *Ord.*, Docket No. 38 at 2. To date, no counsel has entered an appearance for either Defendant and no request for extension of time to retain counsel has been made.

After the deadline for the entry of new counsel expired, the Court entered an order to show cause as to why default should not be entered against Defendants pursuant to Fed. R. Civ. P. 55(a) [Docket No. 42]. Defendants did not respond, either through counsel or otherwise. As such, Defendants have "failed to . . . otherwise defend" this lawsuit. *See* Fed. R. Civ. P. 55(a); *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 917 (3rd Cir. 1992) (recognizing that Rule 55(a)'s "otherwise defend" language provides the court with inherent authority to enter default even if a party has timely answered); *see also Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1310 (2nd Cir. 1991) (authorizing entry of default where party failed to comply with order to obtain counsel); *Yates v. Portofino Equity & Mgmt Co.*, No. 08-cv-00324-PAB-MJW, 2009 WL 2588831, at *3 (D. Colo. Aug. 17, 2009) (same); *DC Aviation, LLC v. Avbase Flight Servs., LLC*, No. 06-cv-01960-PSF-BNB, 2007 WL 2683554, at *1 (D. Colo. Sept. 7, 2007) (same). Accordingly, the Court recommends that the entry of default against Defendant Speedy be approved.

### C. Default Judgment

After confirming the propriety of the entry of default, the Court must decide "whether the unchallenged facts create a legitimate basis for the entry of a judgment." *Greenwich Ins. Co.*, 2008 WL 793606 at *1 (citations omitted). "[A] party is not entitled to a default judgment as of right; rather the entry of default judgment is entrusted to the 'sound judicial discretion' of the court." *Id.* at *2 (quoting *Cablevisions of S. Conn., Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001)). Where the complaint states an adequate legal basis for relief against a party in default, default judgment is appropriate. *Id.* (citing *Weft, Inc. v. G.C. Inv. Assocs.*, 430 F. Supp. 1138, 1143 (E.D.N.C. 1986)).

Upon review of a motion for default judgment, assuming default was properly entered, the moving party enjoys the benefit of deferential pleading interpretation. The Court deems the well-pled facts (as opposed to merely conclusory statements) of the Complaint in this matter to be true. *Id.* at *1 (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)). The Court also accepts as undisputed any facts set forth by the moving party in affidavits and exhibits. *Id.* When assessing damages, however, the Court must establish the amount that the moving party is entitled to recover. *Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984). Whether to conduct a hearing for the purpose of ascertaining damages is discretionary; the Court need not conduct a hearing "if the amount claimed is a liquidated sum or one capable of mathematical calculation." *Held v. Shelter Sys. Group Corp.*, No. 93-1225, 1994 WL 47157, at *1 (10th Cir. 1994) (unpublished) (citing *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985)).

### 1. Choice of Law and Claims Against Speedy

The agreement at issue does not include a choice-of-law provision, nor has choice-of-law been raised as a matter for determination in the filings to date. As Defendant Speedy's performance of the agreement arose in the State of Colorado, and Speedy is subject to the personal jurisdiction of this district, the Court will apply Colorado state law in adjudicating this diversity dispute. *See Century 21 Real Estate Corp. v. Meraj Int'l Inv. Corp.*, 315 F.3d 1271, 1281 (10th Cir. 2003) (citations omitted) ("A federal court in a diversity case applies the choice of law principles of the state in which it sits."). Plaintiff asserts four claims against Defendant Speedy: 1) breach of contract; 2) promissory estoppel; 3) account stated; and 4) quantum meruit. *Compl.*, Docket No. 1 at 6-8. The

Court addresses each claim in turn, as follows.

Pursuant to Colorado law, "a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *Harper v. Mancos Sch. Dist. RE-6*, No. 10-cv-01115-WJM-CBS, 2011 WL 3426211, at *3 (D. Colo. Aug. 5, 2011) (citing *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)). In establishing the existence of a contract, a party must show that the contract was properly formed. Contract formation requires "mutual assent to an exchange, between competent parties, with regard to a certain subject matter, for legal consideration." *Black Educ. Network, Inc. v. AT&T Broadband, LLC*, 154 F. App'x 33, 48 (10th Cir. 2005) (quoting *Indus. Prods. Int'l, Inc. v. EMO Trans, Inc.,* 962 P.2d 983, 988 (Colo. App. 1997)).

Here, the agreement itself does not necessarily embody mutual assent to a certain subject matter by Plaintiff and Defendant Speedy, as the agreement is signed by representatives of Plaintiff only. *See* Colo.Rev.Stat. § 4-3-308 ("In an action with respect to an instrument, the authenticity of and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings."); *see also Ex. 1*, Docket No. 1-1. However, the negotiation and terms of the agreement are corroborated by the testimony of Mr. Ronald R. Miller, Plaintiff's financial manager, in an affidavit attached to the Motion at issue. *Aff.*, Docket No. 53-1. Mr. Miller was signatory to the agreement. *Ex. 1*, Docket No. 1-1 at 4. Accepting Mr. Miller's recounting of the agreement as true, the Court finds that Plaintiff and Speedy mutually assented to the payment plan memorialized by the agreement.

As to legal consideration, the Court notes that, in Colorado, the standard for finding consideration is not high. *See Western Fed. Sav. & Loan Ass'n of Denver v. Nat'l Homes Corp.*, 445 P.2d 892, 897 (Colo. 1968) ("A benefit to the promisor or a detriment to the promisee can constitute consideration, however slight."). Therefore, the forgiven (albeit on a contingent basis) one-half of accrued interest by Plaintiff serves as the necessary consideration to satisfy the first element of a breach of contract claim.

Further, Plaintiff has established the other three elements of its breach of contract claim. Plaintiff performed its obligations according to the terms of the agreement, as it requests a judgment of the payment contemplated by the agreement. Defendant Speedy failed to perform its obligations stated in the agreement by failing to make payments in accordance with the agreement's terms. Finally, Plaintiff incurred damages in the form of unpaid amounts due from Defendant Speedy. Thus, default judgment should be entered against Defendant Speedy on Plaintiff's first claim asserting breach of contract.

Under Colorado law, "[t]he elements of a promissory estoppel claim are (1) the promisor made a promise to the promisee; (2) the promisor should have reasonably expected that the promise would induce action or forbearance by the promisee; (3) the promisee reasonably relied on the promise to his or her detriment; and (4) the promise must be enforced to prevent injustice." *Cherokee Metro. Distr. v. Simpson*, 148 P.3d 142, 151 (Colo. 2006). The Court finds that these elements are met for substantially the same reasons stated above regarding the breach of contract claim. Thus, default judgment should be entered against Defendant Speedy on Plaintiff's second claim for relief, promissory estoppel.

The same holds true for the third claim for relief, premised on the common law principal of "account stated." *Compl.*, Docket No. 1 at 7. An "account stated" claim arises from facts where the law implies a promise to pay, similar to the above-analyzed claims of breach of contract and promissory estoppel. *See Mine & Smelter Supply Co. v. Parke & Lacy Co.*, 107 F. 881 (8th Cir. 1901) (noting "In Error to the Circuit Court of the United States for the District of Colorado"). Again, for the same reasons stated above, the Court finds that default judgment should be entered against Defendant Speedy on Plaintiff's third claim for relief, "account stated."

In its fourth claim, Plaintiff asserts quantum meruit against Defendant Speedy. "Under Colorado law, a plaintiff seeking to recover under a theory of quantum meruit, or unjust enrichment, must establish that '(1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying.'" *Green v. Catholic Health Initiatives Colo.*, No. 05-cv-01058-WYD-MEH, 2007 WL 646285, at *5 (D. Colo. Feb. 28, 2007) (quoting *Salzman v. Bachrach*, 996 P.2d 1263, 1265-66 (Colo. 2000)). The Court determines that Plaintiff prevails on this claim for the same reasons as its first three claims as stated above, and default judgment should be entered against Defendant Speedy on Plaintiff's fourth claim for relief.

## 2. Damages

Pursuant to Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." In the Complaint, Plaintiff requests judgment in its favor against Defendant Speedy "with respect to the First, Second, Third, and Fourth Claims for Relief in the amount of Three Hundred Three Thousand, Four Hundred Two and 16/100 Dollars ($303,402.16), plus interest, post judgment interest, and

16

costs." *Compl.*, Docket No. 1 at 12.

Given this Court's conclusion that Plaintiff is entitled to default judgment against Defendant Speedy as to its first, second, third and fourth claims for relief, the Court recommends Plaintiff be awarded its actual damages, which are discernible pursuant to the terms of the agreement, the accompanying affidavit of Mr. Miller and the bill attached as Exhibit 3 to the Complaint. However, "[a]lthough upon default the factual allegations of a complaint relating to liability are taken as true, those allegations relating to the amount of damages suffered are ordinarily not." *Dundee Cement Co.*, 722 F.2d at 1323. The amount of damages requested in the Motion and Complaint, as reflected in the bill, is $303,402.16. Upon review of the bill, which is undated, the Court notes that the numbers do not match those stated in the agreement. For example, the bill includes entries for interest in July and August 2010. Although Plaintiff requests pre-judgment interest on the amount claimed pursuant to the agreement, a close reading of the agreement reveals that it lacks an agreed-upon interest rate, and the Court declines to construct one in the absence of the parties' meeting of the minds. In light of the discrepancies, further stated below, the Court explains its calculation of the correct amount of damages, as determined within its discretion and Rule 54(c), as follows.

The amount due stated in the agreement is $330,812.87, consisting of $321,929.00 in unpaid principal plus $8,883.87, which was one-half of the amount of accrued interest to date [Docket No. 1-1]. The agreement provided that the other half of the amount of accrued interest would be forgiven upon full payment of the amount due. Speedy has not paid the amount due in full, thus the Court adds another $8,883.87 to the total amount, equaling $339,696.74. Plaintiff attests that Defendant Speedy paid a total of $46,312.00

17

toward the amount due. *Compl.*, Docket No. 1 at 4. $339,696.74 less $46,312.00 equals $293,384.74. The Court determines that Plaintiff is therefore due $293,384.74 from Defendant Speedy, plus post-judgment interest as provided for by federal law, *McBride v. Market St. Mortg.*, 381 F. App'x 758, 775 n.23 (10th Cir. 2010), and costs pursuant to Fed. R. Civ. P. 54(d)(1).[5]

### III. Recommendation

Accordingly, the Court respectfully **RECOMMENDS** that Plaintiff's Motion be **GRANTED IN PART as to Defendant Speedy and DENIED as to Defendant EnQuest**. Default judgment in the amount of $293,384.74, plus post-judgment interest and costs, should be entered against Defendant Speedy, as to Plaintiff's first, second, third and fourth claims for relief.

Pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. CDOC*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v.*

---

[5] The claims against Speedy do not provide a mechanism for the award of attorneys' fees, absent a contractual agreement for payment of such fees. The contract at issue here does not contain a provision authorizing an award of attorneys' fees. *See Ex. 1*, Docket No. 1-1.

*One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: September 19, 2011

BY THE COURT:

 s/ Kristen L. Mix    
United States Magistrate Judge
Kristen L. Mix